282 So.2d 122 (1973)
Joyce MARCUS
v.
Joseph Raymond BURNETT.
No. 52803.
Supreme Court of Louisiana.
August 20, 1973.
Baggett, Hawsey, McClain & Morgan, R. Scott McClain, Lake Charles, for plaintiff-applicant.
Nathan A. Cormie, Lake Charles, for defendant-respondent.
CALOGERO, Justice.
Mrs. Joyce Marcus, plaintiff-relator filed this suit seeking child support for the children of her former marriage with the defendant-respondent, Mr. Joseph R. Burnett.
The district court awarded child support payments in the amount of $60.00 per month per child (a total of $180.00 per month for the three children). Mrs. Marcus appealed to the Third Circuit Court of Appeal seeking an increase in the child support award, and the appellate court affirmed the judgment of the district court.[1]
We granted a writ of certiorari upon the application of Mrs. Marcus because the Court of Appeal recognized that one aspect of their opinion was contrary to jurisprudence of the First Circuit.[2] The Court of Appeal stated that it was giving consideration to the expenses of the second marriage of Mr. Burnett in the determination of the amount of child support, admitting that this was contrary to the opinion in Morace v. Morace, 220 So.2d 775 (La. App. 1st Cir. 1969). In Morace it was held that no consideration should be given *123 to the expenses of the second marriage of the husband.
The following facts are pertinent to our decision in this case.
In September of 1969 Mr. Joseph Burnett was granted a divorce from Mrs. Joyce Burnett (hereinafter referred to as Mrs. Marcus) in the State of Nevada. The judgment contained no provision relative to child custody or support. However, by informal agreement between the parties, Mrs. Marcus retained actual custody of the three children of the marriage, ages 16 and 14 (girls), and 10 (a boy). Mr. Burnett also voluntarily paid $150.00 per month for the children's support. With the exception of a brief period of time during which he was without a job, Mr. Burnett has paid this amount regularly.
Both parties have remarried since their divorce.
Mrs. Marcus' second husband is an operator for Cities Service Oil Company and earns approximately $12,000.00 gross yearly salary. Mrs. Marcus inherited about $6,000 in 1971, and also signed a contract to sell the home owned by the community formerly existing between her and Mr. Burnett. She will receive approximately $4,000.00 from this sale, as will Mr. Burnett.
Mrs. Marcus testified that there are a total of seven persons in the home now occupied by her and her present husband, namely, Mr. and Mrs. Marcus, the 3 children whose support is at issue here, and two children of Mr. Marcus by a prior marriage. She calculated their total expenses for rent, food, clothes, utilities, automobile expense, medical bills, etc. to be approximately $1556.10 per month. Then pro-rating the expenses to each person occupying the household, that is, dividing the total figure by seven, she says she therefore needs $222.30 per child, per month, for their support. Her proof of her family's monthly needs, while imprecise, is probably accurate. However, the equal division of total expenses between the seven persons occupying the household is unrealistic, as it is common knowledge that adults require a greater amount for their support than children. Considering the lifestyle of these children as dictated by the financial circumstances of their parents, we believe that the needs of each of the children is less than the $222.30 monthly claimed by Mrs. Marcus.
With regard to the ability of Mr. Burnett to pay support, the evidence shows that he also is an operator for Cities Service Oil Company and earns a yearly gross salary of approximately $12,000.00. His present wife is employed and earns a gross salary of about $6,000.00 per year.
Although there are four persons occupying the home of Mr. Burnett (including himself, the present Mrs. Burnett and her two children by a prior marriage) the evidence shows that Mr. and Mrs. Burnett also partially support Mrs. Burnett's married daughter, the daughter's husband (who is a student at McNeese College) and their infant child. A monthly sum of $285.00 is diverted from the income of Mr. and Mrs. Burnett for the support of this married daughter's family.
Mr. Burnett itemized the living expenses of his new family, including the $150.00 per month child support which he is voluntarily paying to his first wife, and the sum of $285.00 per month for the family of his present wife's married daughter. His claimed total of minimum monthly expenses is $1515.00. Annually ($18,180.00) these expenses exceed the net salaried income of Mr. and Mrs. Burnett. Accordingly, he opposes Mrs. Marcus' effort to have us increase the $180.00 monthly support directed by the Court of Appeal.
The obligation to support one's children is imposed by the Louisiana Civil Code in Article 227 which states:

"Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children." (emphasis ours)
*124 Pertinent are also the following provisions of the Civil Code:
"Art. 230. By alimony we understand what is necessary for the nourishment, lodging and support of the person who claims it.
"It includes the education, when the person to whom the alimony is due, is a minor."
"Art. 231. Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it." (emphasis ours)
Thus, with regard to children of the marriage both the father and the mother have the obligation to support. Alimony or support is to be granted considering the needs of the person to whom it is due, and the circumstances of those who are obligated to pay it.
As we stated previously the court of appeal opinion expressly took into consideration the living expenses incident to the second marriage of Mr. Burnett (as well as his income and that of his second wife) in their determination of the amount of support for which he was liable. We agree with this approach as it conforms with the realities of his situation and is consistent with Civil Code Article 231 which states that the circumstances of those who are able to pay alimony must be taken into account. There is no limitation in this article which would preclude considering expenses of the second marriage of the husband in determining his liability for child support for children of his first marriage.
Moreover, this court has previously recognized that the income of a second wife is to be considered in determining the husband's obligation to support children of his first marriage. Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1954). It would be unfair to allow consideration of additional income made possible by a second marriage while disallowing consideration of the expenses of that marriage.
In accordance with the language of La. C.C. Art. 231, in the instant case, we find the totality of the pertinent circumstances of the father (and as will be noted hereinafter, the mother as well) is to be considered in ascertaining the appropriate amount of child support. Save in exceptional circumstances this should include a consideration of the fact that the father has remarried, and that incident to this second marriage there are expenses which he must bear.[3]
We do not read Laiche v. Laiche, 237 La. 298, 111 So.2d 120 (1959) as setting forth an invariable rule that the expenses of a second marriage can never be considered when determining liability for support of children of a prior marriage. Extreme circumstances there dictated that support payments not be reduced, notwithstanding additional expenses incident to a second marriage of the husband.
In Laiche, the husband had six children by his first wife. Subsequent to their divorce the wife obtained an order requiring the husband to pay $150.00 per month for the support of all six children. Two years later, the husband sought by rule to have this monthly support award reduced.
At the time the rule for reduction was filed the children were ages 15, 13, 11, 8, 7 and 5. They were living with their mother in a three room house with no bathroom or running water. The mother was unemployed and the family was existing solely on the $150.00 per month supplied by the husband. In short, they were in necessitous circumstances.
*125 Since the divorce, the husband had remarried and incident to this second marriage he had incurred a substantial amount of obligations. He contended to this Court that those obligations should avail him a reduction in the amount of support which he owed to his children.
It was in that special factual context that we said:
"Following the divorce, plaintiff had the right to make a new life for himself by remarrying and raising another family and he is not to be penalized for exercising this unquestioned privilege. But he cannot be allowed to employ the costs and indebtedness he has incurred by reason of his second marriage as a basis for relief from the obligation he owes to the children of the first marriage. Indeed, any voluntary act by a parent which renders it difficult or impossible to perform the primary obligation of support and maintenance of his children cannot be countenanced as a ground for release, either wholly or partially, from the obligation."
The facts of the Laiche case make the principle enunciated there unsuitable for application in the instant case. In Laiche the mother of the children was in dire poverty and she was unemployed, whereas in the instant case Mrs. Marcus has a substantial sum of money at her disposal as well as a good provider, her second husband. While Mr. Marcus has no legal obligation to support the children in question, this court simply will not blind itself to the reality that the mother, who does have a legal obligation to support her children, has married a capable provider who has enhanced her opportunity to furnish a portion of the support of the children in her custody.
The analysis which we have made here regarding Mrs. Marcus' ability to support her children is consistent with the principle which we have expressed earlier in this opinion and which we feel should govern when a court is determining the amount of child support to be awarded. That is, the court should consider the totality of the circumstances involved.
We now turn to a consideration of the correctness of the amount awarded by the Court of Appeal, i. e., $180.00 per month for three children, or $60.00 per month per child.
Mrs. Marcus contends that in eleven months her former husband has managed to save $3,077.94 in his company's credit union, and this should suggest that he has the ability, and thus the obligation, to contribute more to the support of the children than the trial judge awarded.
While we do agree that she is entitled to more than $180.00 per month, we do not find that the accumulated savings of Mr. Burnett represent income in excess of his expenses. These savings withheld from his salary represent, in actuality, proceeds received by Mrs. Burnett from transactions involving her separate real estate. These monies of Mrs. Burnett were employed entirely for the couple's living expenses, while portions of Mr. Burnett's salary (which normally would have been used for these expenses) were invested in the credit union.
Considering the needs of the children, the totality of the circumstances of Mrs. Marcus and Mr. Burnett, and considering that each of them has an obligation, and the ability, to contribute to the support of the three children of the marriage, we feel that the judgment directing defendant to pay $180.00 per month for support of the three children is inadequate.
Accordingly, the monthly award will be increased from $60.00 per child to $80.00 per child.
The judgment of the Court of Appeal is hereby amended so as to provide that plaintiff is entitled to judgment for child support in the amount of $80.00 per month per child or a total of $240.00 per month. *126 This amount shall be payable in semi-monthly installments of $120.00 on the first and fifteenth of each month.
MARCUS, J., concurs.
NOTES
[1] 264 So.2d 737 (La.App.3rd Cir. 1972).
[2] See La.Const. of 1921, Art. 7, Sec. 11.
[3] Of course, as in this case where his second wife has earnings available for payment of expenses incident to the second marriage, this also is a factor to consider. See Fazzio, supra.